# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 2, 2005 Session

## MURFREESBORO MEDICAL CLINIC, P.A. v. DAVID UDOM

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Rutherford County**
**No. 02-5739CV     Robert E. Corlew, III, Chancellor**

---

### No. M2003-00313-SC-S09-CV - Filed June 29, 2005

---

JANICE M. HOLDER, J., concurring and dissenting.

Although I agree that the restrictive covenant in this case is unenforceable, I write separately to voice my disagreement with the majority's holding that restrictive covenants involving physicians are unenforceable and void unless specifically permitted by Tennessee Code Annotated section 63-6-204(d) and (e) (Supp. 1998). I do not believe that the legislature's decision to validate physicians' restrictive covenants in the two circumstances described in section 63-6-204(d) and (e) prohibits all other restrictive covenants between physicians.

In 1994, the legislature amended section 63-6-204 to include subsection (d). Subsection (d) validates physicians' restrictive covenants when the employer is a hospital, or an affiliate of a hospital, that has made a bona fide purchase of the physician's practice. See Tenn. Code Ann. § 63-6-204(d) (Supp. 1994). In 1998, the legislature further amended section 63-6-204 to include subsection (e). Subsection (e) validates restrictive covenants between physicians and faculty practice plans associated with a medical school. See Tenn. Code Ann. § 63-6-204(e) (Supp. 1998). The legislative history of subsection 63-6-204(e) indicates that the legislature did not intend a substantive change in the law but merely a clarification of pre-existing law. See Med. Educ. Assistance Corp. v. Mehta, 19 S.W.3d 803, 813 n.2 (Tenn. Ct. App. 1999) (quoting testimony from the Senate General Welfare Committee on May 21, 1997). Thus, the legislature recognized that pre-existing law still permitted some forms of covenants-not-to-compete involving physicians even after the enactment of section 63-6-204(d).

In enacting subsections (d) and (e), the legislature chose to regulate only some of the restrictive covenants involving physicians. Had the legislature intended to preclude all other physicians' restrictive covenants, it could have simply precluded all restrictive covenants.

The majority discusses Spiegel v. Thomas, Mann, & Smith, P.C., 811 S.W.2d 528, 531 (Tenn. 1991), in which this Court held that restrictive covenants between attorneys are void and unenforceable. The majority concludes that "no practical difference" exists "between the practice of law and the practice of medicine." This Court, however, is responsible for regulating attorneys' conduct and prescribing standards of ethical conduct. See Tenn. Sup. Ct. R. 8, 9; see also Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C., 813 S.W.2d 400, 403-04 (Tenn. 1991) (discussing the purpose of the Code of Professional Responsibility). In Spiegel, we interpreted the Tennessee Supreme Court Rules as prohibiting attorneys' restrictive covenants. Spiegel, 811 S.W.2d at 531.

In contrast, the Tennessee Board of Medical Examiners, not this Court, establishes ethical standards for physicians. See Tenn. Code Ann. § 63-6-214(b)(1) (Supp. 1999); Swafford v. Harris, 967 S.W.2d 319, 321 (Tenn. 1998). In setting these ethical standards, the Board adopted the AMA Code of Medical Ethics, which views non-compete agreements involving physicians unfavorably but does not prohibit them. AMA Code of Medical Ethics § E-9.02 (1998). The twelve-member Board, of which nine members are duly licensed physicians, is in a much better position than this Court to determine whether restrictive covenants involving physicians should be prohibited entirely. See Tenn. Code Ann. § 63-6-101 (1997) (providing for the creation and composition of the Board); see also State v. Robinson, 139 S.W.3d 661, 666-67 (Tenn. Crim. App. 2004) (reversing the trial court's order prohibiting the defendant, a pharmacist, from practicing pharmacy as a condition of probation because "the powers of the Tennessee Board of Pharmacy are adequate to regulate the defendant's conduct within the profession").

Physicians' restrictive covenants that are not otherwise regulated by Tennessee Code Annotated section 63-6-204 (Supp. 1998) are enforceable if reasonable and not injurious to the public. I agree, however, with those jurisdictions that hold these restrictive covenants to a higher level of scrutiny than covenants not to compete in commercial contexts. See e.g., Valley Med. Specialists v. Farber, 982 P.2d 1277, 1282-83 (Ariz. 1999); Iredell Digestive Disease Clinic v. Petrozza, 373 S.E.2d 449, 455 (N.C. Ct. App. 1988); Ohio Urology, Inc. v. Poll, 594 N.E.2d 1027, 1032 (Ohio Ct. App. 1991). Factors that should be considered in determining whether a particular restrictive covenant involving a physician meets this heightened scrutiny include: 1) the necessity of protecting a legitimate business interest; 2) the reasonableness of the time and territorial limitations; 3) the economic hardships imposed on the employee, and 4) any harm to the public interest resulting from the covenant.

The business interest that Murfreesboro Medical Clinic ("MMC") seeks to protect in enforcing the covenant is its continued relationship with its patients. A person, however, has the right to choose a physician and continue a relationship with that physician. Furthermore, the record contains no evidence that Dr. Udom obtained business secrets or removed confidential business information or patient lists upon leaving MMC. The record fails to demonstrate that Dr. Udom, who was a licensed physician when hired by MMC, received advanced training or acquired special skills while employed at MMC other than practical, on-the-job experience. Although MMC expended sums for salary, equipment, office space, and administrative support, these expenditures were necessary for MMC to conduct business independent of Dr. Udom's presence in the practice.

The twenty-five-mile limitation is overly broad as the evidence fails to demonstrate the extent to which MMC and Dr. Udom would compete for patients within the entire twenty-five-mile area. This area also appears to extend beyond one county and into communities outside of Murfreesboro. The legislature, in choosing to regulate some forms of restrictive covenants involving physicians, has restricted the applicable area to ten miles or the county in which the employer's site is located, whichever is greater. See Tenn. Code Ann. § 63-6-204(d), (e) (Supp. 1998). While this restriction is not applicable to Dr. Udom's covenant, it is instructive in determining the reasonableness of the restriction at issue.

Furthermore, enforcement of the covenant would inflict an undue hardship on Dr. Udom. The covenant restricts Dr. Udom from practicing in any field of medicine within the restricted area regardless of whether he was competing with MMC in the field of internal medicine. This restriction is particularly harsh because MMC, not Dr. Udom, decided to end the employment relationship, and the evidence does not indicate that MMC terminated the relationship for cause.

Finally, the evidence does not suggest that enforcement of the covenant would result in a shortage of physicians or internal medicine specialists in the area. The remaining factors, however, weigh against enforcement of the covenant. Thus, while I agree that this particular restrictive covenant is unenforceable, I respectfully dissent from the majority's holding that all restrictive covenants involving physicians are void and unenforceable absent a specific statutory provision to the contrary.

_____
JANICE M. HOLDER, JUSTICE